THE STATE, EX REL. THE ATTORNEY GENERAL, *v.* MEYER..

REAL ESTATE, ACTION TO RECOVER.—*Information by State on Relation of Attorney General.— Lands Escheated to State for want of Heirs.*—Under section 9 of the act of March 10th, 1873, prescribing the duties of the attorney general, 1 R. S. 1876, p. 151, he may file an information in the nature of a *quo warranto,* in the name of the State, on his own relation;.

The State, *ex rel.* the Attorney General, *v.* Meyer. .

to recover the possession of real estate which has escheated to the State, for the use of the common school fund, for want of heirs or kindred entitled to inherit.

SAME.—*Adoption Under Laws of Foreign State.—Constitutional Law.—Common School Fund.*—The act of December 21st, 1865, 1 R. S. 1876, p. 417, enabling children adopted under the laws of any other state of the United States to take and hold real estate in this State, is not in conflict with section 2 of article 8 of the constitution of this State, 1 R. S. 1876, p. 38, prescribing what shall constitute the common school fund.

SAME.—Under said section 2 of article 8 of the constitution, it is " the fund to be 'derived from the sale of " escheated real estate, and not such real estate itself, which becomes a part of the common school fund.

SAME.—*Defence.—Adopted Child.*—Where an information has been filed in the name of the State, on the relation of the Attorney General, to recover the possession of real estate alleged to have escheated to the State for want of heirs or kindred entitled to the inheritance, it is sufficient to answer, alleging title through one adopted by the intestate, under the laws of another state of the United States, and the filing of the record of adoption, in this State, in accordance with said act of December 21st, 1865.

SAME.—*Evidence.—General Denial.*—All defences to such proceeding are admissible in evidence under the general denial.

From the Knox Circuit Court.

*W. H. De Wolf, G. G. Reily, W. C. Johnson* and *S. N. Chambers*, for the State.

*F. W. Viehe* and *R. G. Evans*, for appellee.

HOWK, C. J.—This was an information, in the nature of a *quo warranto*, filed by the attorney general of this State, as the relator of the appellant, in the circuit court of Knox county, against the appellee, as defendant, for the recovery of certain real estate, particularly described, in said county, which real estate, it was alleged, had escheated to the State of Indiana, for the use and benefit of its common school fund.

In said information it was alleged, in substance, that, on the 14th day of May, 1861, one Margaretta Ormand became the owner, in fee-simple, of said real estate, by purchase, of the value of, to wit, ten thousand dollars; that afterward, on the 4th day of December, 1863, the said Mar-

garetta Ormand departed this life intestate, and leaving no heirs capable of inheriting said real estate; that afterward, on the —— day of ————, 187—, the appellee entered into the possession of said real estate, and had ever since held possession thereof without right; and that, by means of the premises, the said real estate had escheated to the State of Indiana, for the benefit of its common school fund. Wherefore, etc.

To this information, the appellee answered in three paragraphs, the first being a general denial, and each of the other two paragraphs setting up an affirmative defence.

The appellant demurred to each of the second and third paragraphs of the appellee's answer, upon the ground that it did not state facts sufficient to constitute a defence to said information, which demurrers were overruled by the court, and to these decisions the appellant excepted.

The appellant declined to reply to the second and third paragraphs of said answer; and thereupon the court rendered judgment on said demurrer in favor of the appellee, from which judgment this appeal is now here prosecuted.

In this court the appellant has assigned, as error, the decision of the circuit court, in overruling the demurrers to the second and third paragraphs of the appellee's answer.

In the second paragraph of his answer, the appellee alleged, in substance, that, by an act of the Legislature of the State of Pennsylvania, approved May 4th, 1855, and still in force, it was provided, that it should be lawful for any person desirous of adopting any child as his or her heir, or as one of his or her heirs, to present his or her petition to such court in the county where he or she might be resident, declaring such desire, and that he or she would perform all the duties of a parent to such child; and such court, if satisfied that the welfare of such child would be promoted by such adoption, might, with the consent of the

parents or surviving parent of such child, or, if none, of the next friend of such child, or of the guardian, or overseer of the poor, or of such charitable institution as should have supported such child for at least one year, decree that such child should assume the name of the adopting parent, and have all the rights of a child and heir of such adopting parent, and be subject to all the duties of such child, of which the record of the court should be sufficient evidence.

And the appellee said, that, on the 23d day of April, 1857, Margaretta F. Ormand, then a resident of the city and county of Philadelphia, in the State of Pennsylvania, filed her petition in the common pleas court for said city and county, setting forth that she was desirous of adopting as her daughter one Emma Louisa Simpson, then the minor child of Sarah Simpson, and whose father was dead, and declaring that the petitioner would perform all the duties of a parent to said child; that said court was then satisfied that the interests of said child would be promoted by such adoption; and, therefore, with the consent of said Sarah Simpson, the only surviving parent of said child, decreed that said child should assume the name of the adopting parent, and have all the rights of a child and heir of said adopting parent, and be subject to all the duties of such child; that afterward, on the —— day of ——, 1863, the said Margaretta F. Ormand departed this life intestate, without leaving issue surviving her; and thereupon the said adopted child entered into the possession of said real estate, claiming the same by virtue of her adoption as heir at law of said decedent, and so remained in possession until the —— day of November, 1871, when she and her then husband, Richard Peniston, conveyed the same by deed, with full covenants of warranty, to the appellee, who had been ever since and then was in possession thereof; and that, on the —— day of ——, 1866, there was filed with the clerk of the court of common pleas of Knox county,

Indiana, a copy of said proceedings of said common pleas court of said city and county of Philadelphia, and on the same day the said copy was, by the order of said court of common pleas of Knox county, in open session of said court, entered on the order-book thereof.

The third paragraph of the appellee's answer is substantially the same in its averments as the second paragraph thereof, and differs therefrom only in this, that it was alleged in said third paragraph, that the said copy of said proceedings of said common pleas court, of the said city and county of Philadelphia, was filed in the court below, with the clerk thereof, on the 13th day of September, 1875, for the purpose of perfecting the title so conveyed to the appellee by law, and that afterward, on said last named day, the said copy, duly authenticated, was, by the order of said last named court, in open session of said court, entered on the order-book thereof.

The question for decision in this case is this : Are the facts stated in the second and third paragraphs of the appellee's answer, sufficient to constitute a valid defence to the appellant's information ?

In section 761, of the practice act, it is provided, that, " Whenever any property shall escheat, or be forfeited to the State for its use, the legal title shall be deemed to be in the State from the time of the escheat or forfeiture ; and an information may be filed by the prosecuting attorney in the circuit court for the recovery of the property, alleging the ground on which the recovery is claimed; and like proceedings and judgment shall be had, as in a civil action for the recovery of property." 2 R. S. 1876, p. 301.

Under the facts alleged in the information in this case, the attorney general had the right to sue in the name of the State, on his own relation. 1 R. S. 1876, p. 152, sec. 9. Under section 596 of the practice act, the second and third paragraphs of the appellee's answer were unnecessary

pleadings in this action, as the appellee, under the general denial, in the first paragraph of his answer, was " permitted to give in evidence every defence to the action that he may have, either legal or equitable." 2 R. S. 1876, p. 252. But, as the appellant's relator does not complain, in this court, of the second and third paragraphs of the answer, upon the ground that they were unnecessarily pleaded, we will consider and decide the questions presented in and by said paragraphs, as if the same had been necessarily pleaded in this action.

It is conceded by the learned counsel of both the appellant and the appellee, that the decision of this cause depends entirely upon an act of the General Assembly of this State, entitled "An act to enable any child heretofore adopted, or which may hereafter be adopted, by any person, under the laws of any state of the United States, to take and hold real estate in this State as if the child had been adopted under the laws and within the State of Indiana," approved December 21st, 1865. 1 R. S. 1876, p. 417, note 1. It is conceded by the appellant's counsel, as we understand them, that, if the above entitled act is constitutional and valid, then the facts stated in said paragraphs of answer would constitute good and sufficient defences to the appellant's action. On the other hand, it is conceded by the appellee's counsel, that, if said act is unconstitutional and void, the second and third paragraphs of the appellee's answer do not state facts sufficient to constitute valid defences to the appellant's information.

The act in question contained but two sections, the second of which simply declared that an emergency existed for the immediate taking effect of said act, and that the same should, therefore, take effect and be in force from and after its passage. Omitting the enacting clause, the 1st section of said act provided as follows :

" That wherever any child may have heretofore been

The State, *ex rel.* the Attorney General, *v.* Meyer.

adopted or may hereafter be adopted by any person in any other state of the United States, under and pursuant to the laws in force in the state where such adoption shall be made, the same shall, upon filing the record thereof with the clerk of the court of common pleas of any county within this State, and having the same entered upon the order-book of said court in open session thereof, have the same force and effect, and such child so adopted shall have the same rights and be capable of taking property situate within this State, by inheritance, upon the death of the person adopting, whether before or after the passage of this act, as though such child had been adopted within and pursuant to the laws of the State of Indiana." *Supra.*

It is claimed by the appellant's counsel, that this section of the statute is in conflict with the provisions of the 8th article of the constitution of this State, and is therefore void. In section 2 of this 8th article, it is provided, that "The common school fund shall consist of," among other things, "all lands and other estate which shall escheat to the State for want of heirs or kindred entitled to the inheritance." In section 3 of the same article, it is provided, that "The principal of the common school fund shall remain a perpetual fund, which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of common schools, and to no other purpose whatever." 1 R. S. 1876, pp. 38 and 39.

The argument of the appellant's counsel may be summarized, as follows:

On the 4th day of December, 1863, Margaretta Ormand died intestate, and seized in fee-simple of the real estate described in the information, and without "heirs or kindred entitled to the inheritance;" thereupon the said real estate escheated to the State, and became a constituent part

of the "common school fund;" this "fund shall remain a perpetual fund, which may be increased, but shall never be diminished;" that, in so far as the said act of December 21st, 1865, before cited, was retroactive in its provisions, its effect was necessarily, in this case, to diminish the " common school fund," to the extent of the value of said real estate ; and that that far forth the act in question was in direct conflict with the provisions of said section 3 of article 8 of the constitution, and was therefore void and of no effect.

It seems to us, that this argument is unsound. It is very clear, we think, that the real estate described, as such, never became a component part of the "common school fund," as described in said article 8 of the constitution. We read the 3d section of said article, in so far as it is applicable to the case at bar, as follows :

" The common school fund shall consist of  *  *  *  the fund to be derived from the sale of  *  *  *  all lands and other estate which shall escheat to the State for want of heirs or kindred entitled to the inheritance.

The provisions of said article 8 of the constitution, in relation to education, were certainly not self-acting in their operation. Legislation was requisite and necessary to carry those provisions into practical effect, and especially to create the " common school fund," therein and thereby provided for, and to make it " safe and profitable." Accordingly it was provided in section 4 of said article, that " The General Assembly shall invest," (that is, provide by law for such investment,) " in some safe and profitable manner, all such portions of the common school fund as have not heretofore been intrusted to the several counties ; and shall make provision by law for the distribution, among the several counties, of the interest thereof." 1 R. S. 1876, p. 39. " The fund to be derived from the sale of " escheated real estate, and not the real estate itself, would become, under

the constitution, a part of the "common school fund ;" and, as the real estate, described in the appellant's information, has never been sold as escheated lands, of course the fund to be derived from such sale has never become a part of the " common school fund.'

We have said, that legislation was requisite and necessary to carry into effect the provisions of the 8th article of the constitution of this State; and especially was it necessary, we think, that the General Assembly should provide, by just, wise and liberal legislation, for the management, care and final disposition of escheated estates. It had never been, and is not now, in our opinion, the policy of this State, to enforce rigidly the recovery of escheated or forfeited estates. That this is so, is shown by the many acts, passed by the Legislature of this State, to enable the alien heirs of deceased owners of real estate, which had escheated to the State for the want of legal heirs or kindred, to take the inheritance.

At the first session of the General Assembly, after the adoption of the present constitution of this State, an act was passed, entitled  " An act providing for the settlement of decedents' estates, prescribing the rights, liabilities and duties of officers connected with the management thereof, and the heirs thereto, and certain forms to be used in such settlement," approved June 17th, 1852.   Sections 141 and 142 of this act contain full, and we think, wise and liberal provisions in relation to the care, management and the final disposition of escheated real estate. 2 R. S. 1876, p. 544. In section 11 of " An act regulating descents and the apportionment of estates," approved May 14th, 1852, it is provided, that " The estate of a person dying intestate without kindred capable of inheriting, shall escheat to the State, and shall be applied to the support of common schools, in the manner provided by law." 1 R. S. 1876, p. 410. But the said sections 141 and 142, before cited, provide

when, how and in what manner the real estate of such intestate shall be sold, and what shall be done with the proceeds of such sales. These sections read as follows :

" Sec. 141. If, at the final settlement of an estate, there be real estate undisposed of, and no heirs who are entitled to its possession, claiming it, if there be an executor thereof, the court shall direct him to lease such real estate, if it be susceptible of producing rent, to any person, for a period not over one year, taking bond of the lessor [lessee ?], with sufficient surety for the amount of such rent, conditioned to keep in good order such premises, and [for ?] the payment of taxes thereon ; and if there be no executor, the court shall direct the administrator of such estate to lease such real estate, under the same regulations as are provided in the case of an executor ; but before proceeding to such duties, such executor or administrator shall execute a bond payable to the State of Indiana, with a penalty in double the value of such real estate, with surety to be approved by the court, conditioned for the faithful performance of the duties of his trust.

" Sec. 142. Such court may, from time to time, order the releasing of such real estate, in case the heirs thereof do not appear and establish their heirship, until the expiration of five years after such final settlement, when if no heirs appear, the court shall order such executor or administrator to sell such real estate under the same regulations as are provided in case of sales of real estate, where the personal is insufficient to pay debts, and upon the purchase-money therefor being paid into court, the clerk shall pay the same to the treasurer of the county, who shall pay it to the treasurer of state, on whose books it shall be credited to the unknown heirs of the deceased."

These sections of the decedents' estates' act were enacted immediately after the adoption of the present constitution

of this State, by a General Assembly, many of whose members had also been members of the convention which framed that constitution. The legislation is important, therefore, as a contemporaneous exposition or construction of the provision of the constitution in relation to escheated lands. It is evident, we think, from the provisions of these sections, which have continued since their enactment, and still are, a part of the law of this State, that the Legislature never understood nor intended that the real estate of a decedent, "for the want of heirs or kindred entitled to the inheritance," became, as real estate, a component part of the "common school fund," which should "never be diminished." The theory of the law is, that such real estate of such decedent, which might not be needed for the payment of debts, should be kept intact as real estate, until the expiration of five years after the final settlement of the decedent's estate, and should then be sold, under the order of the proper court, as real estate is sold for the payment of a decedent's debts, and the proceeds of such sale should be paid ultimately into the state treasury.

We are clearly of the opinion, that the real estate in controversy in this action has never yet become a constituent part of the "common school fund." In so far as this case is concerned—and we confine our decision to the case at bar—it seems to us, that the provisions of the act of December 21st, 1865, before cited, are in no manner affected or invalidated by any of the provisions of the 8th article of the state constitution; and that, under the averments of the second and third paragraphs of the appellee's answer, and the law applicable thereto, the adopted child and heir of the deceased owner of said real estate lawfully took the inheritance.

The facts alleged in the affirmative paragraphs of the appellee's answer were sufficient, we think, to constitute a complete defence to the appellant's information.

The judgment is affirmed.