### McAlpine, Polk & Co.

*v.*

### Julia Zitzer *et al.*

*Filed at Mt. Vernon January 25, 1887.*

1. Tax title—*acquired by the owner—treated as a payment of taxes, only.* Where the owner lets his land be sold for taxes, and buys it in at the tax sale, he does not thereby get any independent title, but the transaction will be treated as but a payment of the taxes.

2. Same—*tax title obtained by a third person by collusion with the owner, to defeat a mortgage.* Where a mortgagor, by fraud and collusion

18—119 Ill.

with another, suffers the premises to be sold for taxes, and procures such third person to purchase the same to defeat the mortgage, the tax title will be treated the same as if the mortgagor were the purchaser, and held subject to the mortgage.

3. SAME—*service of notice upon tenants in possession, as to expiration of time of redemption.* Where the holder of a certificate of purchase at a tax sale fails to serve the requisite notice of the purchase, and of the time when the redemption will expire, on a tenant in the occupancy of a building upon the premises, he will acquire no title, notwithstanding he may have made affidavit that he had served such notice on all persons in possession.

4. REMEDY—*to question the validity of tax title set up to defeat a fore-closure—whether at law or in equity.* On bill to foreclose a mortgage, the validity of a tax title held by a third party, not acquired by collusion with the mortgagor, will not be passed upon and determined in that suit, but will be left to be adjudicated in an action at law. But if the tax title has been obtained by such collusion, it will be in subordination to the mortgage, and the question of its validity may be passed upon in the suit to foreclose, and the title made subject to the mortgage in the decree of foreclosure.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Richland county; the Hon. W. C. JONES, Judge, presiding.

Messrs. WILSON & HUTCHINSON, for the appellants:

As a general rule, when a court of chancery acquires jurisdiction, it settles all the matters incidentally arising in connection with the principal matter. *Wade* v. *Bunn*, 82 Ill. 120; *Roole* v. *Decker*, 92 id. 508.

The cases of *Gage* v. *Perry*, 93 Ill. 176, and *Gage* v. *Board of Directors*, 4 Bradw. 412, relied on by appellees, differ widely from this case. In both those cases, there was an outstanding legal title existing before the mortgage was given, while here, the tax title was acquired after the mortgage, by fraud and collusion, to defeat the mortgage.

If fraud has been proved, chancery will decree the proper relief, even if law has full jurisdiction of it. *Turrett* v. *Wainwright*, 4 Gilm. 418; *Kennedy* v. *Northup*, 15 Ill. 148; *Nelson* v. *Rockwell*, 14 id. 375; *Babcock* v. *McComant*, 53 id. 215.

The notice of the tax sale was not sufficient.  No notice was published, as to appellants, by publication, as required, nor upon all the parties in possession.   Revenue Law, sec. 216.

The mortgagor can not, by suffering his land to go to sale, acquire a tax title to defeat his mortgage, nor can he collude with a third party to effect the same purpose, and purposely conceal the fact of the tax sale.

Messrs. ALLEN & FRITCHEY, for the appellees:

A court of equity will not inquire into the validity of a tax title to determine whether it is a cloud upon a legal title, and to enjoin the holder from asserting it.   *Hamilton* v. *Quimby,* 46 Ill. 90; *Springer* v. *Rosette,* 47 id. 223.

Courts of equity will not assume jurisdiction to remove a cloud by tax title, unless complainant is in possession, or the land unoccupied.   *Wing* v. *Shearer,* 77 Ill. 200; *Hardin* v. *Jones,* 86 id. 213; *Whitney* v. *Stevens,* 97 id. 482.

In a bill to foreclose, a third party holding an adverse title can not be made a party to the bill, unless the adverse title is derived from the mortgagor or some one claiming under him.   *Gage* v. *Perry,* 93 Ill. 176; *Gage* v. *Board of Directors,* 8 Bradw. 410; *Bozarth* v. *Landers,* 113 Ill. 181.

The court, on motion, should dismiss a bill to foreclose, as to third parties claiming adverse title, when the evidence shows that the adverse title was not derived from the mortgagor, or some one claiming under him.   *Gage* v. *Perry,* 93 Ill. 176; *Bozarth* v. *Landers,* 113 id. 181.

The purchaser of land at a tax sale is only required to give such notice of his intention to take a deed, as may be required by the statutes.   *Roper* v. *Sangamon Lodge,* 91 Ill. 518.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, for the foreclosure of a mortgage on lots in Olney, in this State, executed by John Von Gunten and his wife, on May 7, 1880, to secure the payment of three

promissory notes of the same date, made by John Von Gunten to McAlpin, Polk & Co., payable in one, two and three years after date, with eight per cent interest. Charles Von Gunten was made a·party, the bill seeking to set aside a tax deed for the lots in his favor, on the ground that it was obtained by fraud and collusion. Pending the suit, he made a quitclaim deed of the lots to Julia Zitzer, and she was made a party. The circuit court, on final hearing, rendered a decree of fore-closure, holding the tax deed to have been obtained by fraud and collusion, and to be void as against the mortgage. On appeal to the Appellate Court for the Fourth District, that court reversed the decree as to Julia Zitzer, and dismissed the bill as to her, and affirmed the decree in all other respects.

On June 14, 1880, the lots were sold for the taxes of 1879, by the collector of Richland county, and bid off by Charles Von Gunten at the sum of $26.62. On June 16, 1882, he obtained from the county clerk a tax deed for the lots. At the time of the tax sale, and afterward, McAlpine, Polk & Co. lived in Cincinnati, Ohio, and John Von Gunten, the mortgagor, lived at Olney, in this State, and was in the occupancy of the property, carrying on a store thereon. Charles Von Gunten was his son, a single man, and lived with his father. Julia Zitzer was the sister of Charles Von Gunten. The property, at the time of the tax sale, was worth $4500. After the tax sale, John Von Gunten sold twenty feet off from one of the lots, for $1500, and after obtaining the tax deed, Charles Von Gunten made a quitclaim deed for the twenty feet to the purchaser. The purchase money was paid to and applied by John Von-Gunten to the payment of the first of the three mortgage notes, thus showing that after the tax sale John Von Gunten dealt with the property as his own, selling a portion of it, and receiving the proceeds for his own use, with the assent of his son, Charles.

It is an express provision of the statute, that no purchaser at a tax sale shall be entitled to a tax deed until certain con-

ditions shall be complied with, one of which is, that he shall serve a written or printed notice of the sale, and when the time of redemption will expire, on the owners of, or parties interested in, the land, if they can, upon diligent inquiry, be found in the county, and if they can not be so found, then shall make publication of the notice in a newspaper in the county; and shall also, before being entitled to such deed, make an affidavit of compliance with such conditions. On June 15, 1882, the day of taking out the tax deed, Charles Von Gunten made an affidavit before the county clerk, which, after stating the service of the notice on John Von Gunten, the person in whose name the lots were assessed, and on Daniel Gaffner and Gottlieb Gaffner, the persons in the actual occupancy of a part of the lots, proceeded as follows: "That there is no other person or persons in the possession of said premises; that upon diligent inquiry, affiant has been unable to find any other person in said county having an interest in said lots, or either of them, or any part thereof, * * * and that affiant relies upon the foregoing facts as such compliance with the law as to entitle him to a deed for said lots." And yet, the said Charles Von Gunten, at that time, well knew of this mortgage, and also that Gardner & Schultz were in the actual occupancy of a building upon the lots, under a lease made to them by John Von Gunten, on February 4, 1882, and continued in such occupancy until November, 1882, when the building was burned. Schultz and Gardner testify that they had no notice of the tax sale, and that if they had had such notice, they think they would have notified the mortgagees, as they knew of the mortgage, and did business with the mortgagees. The mortgagees had no notice of the sale for taxes until after the tax deed was made.

The facts in the case quite plainly indicate, to our minds, that there was fraud and collusion between John Von Gunten and his son, Charles, to defeat this mortgage; that by understanding between them, the property was let go to sale for

taxes, and was bought in by Charles for the benefit of his father. It was the duty of the mortgagor to pay the taxes. We have often held that where the owner lets his land be sold for taxes, and buys it in at the tax sale, he does not thereby get any independent title,—that it is but a mode of paying the taxes. As respects the mortgage, we can view the tax sale as of no different effect than if the mortgagor had, himself, been the purchaser at the tax sale, and we hold that the tax title is subject to the mortgage.

The cases of *Gage* v. *Perry,* 93 Ill. 176, and *Bozarth* v. *Landers,* 113 id. 181, are cited by the appellees as sustaining the proposition that in a suit for the foreclosure of a mortgage the validity of a tax title held by a third party will not be passed upon and determined. There was no such case of collusion there, as the facts here present. Those cases but proceeded upon the general, well understood rule, that mere legal titles are for trial and determination in courts of law, and that in a suit in chancery for the foreclosure of a mortgage, the independent legal title of a third person, which is adverse and paramount, should not be drawn into adjudication there. The tax title here is not an independent one, and adverse and paramount. The facts of the case make it subject to the mortgage, and it is properly the subject of investigation in a suit to foreclose the mortgage.

The judgment of the Appellate Court is reversed, and the decree of the circuit court affirmed.

*Judgment reversed.*